UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| United States of America,<br><br>          v.<br><br>Maximilien de Hoop Cartier,<br><br>                 Defendant. | No. 1:24-cr-00133-MKV |

**REPLY IN FURTHER SUPPORT OF
DEFENDANT'S MOTION TO DISMISS**

 

Morvillo Abramowitz Grand
Iason & Anello P.C.
565 Fifth Avenue
New York, NY 10017
(212) 856-9600 (telephone)

*Counsel for Defendant
Maximilien de Hoop Cartier*

-i-

## **TABLE OF CONTENTS**

ARGUMENT ........................................................................................................................ 1

    I.      Count Three Should Be Dismissed. ........................................................................ 1

           A.      The Court Can Dismiss the Bank Fraud Count Because the Uncontested Facts Do Not State an Offense. ................................................................... 1

           B.      The Government's Legal Theory Is Not Viable. ......................................... 2

           C.      Count Three Must Be Dismissed. ................................................................ 7

           D.      Count Three Should Also be Dismissed Because It Fails to Allege False Statements. .................................................................................................. 8

    II.     Counts Two and Four Should Be Dismissed. ........................................................ 8

CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ciminelli v. United States*, 598 U.S. 306 (2023) .................................................................. 5

*Kelly v. United States*, 590 U.S. 391 (2020) ......................................................................... 5

*Loughrin v. United States*, 573 U.S. 351 (2014) ................................................................... 5

*Shaw v. United States*, 580 U.S. 63 (2016) ................................................................... 3, 4, 5

United States v. *Aleynikov*, 737 F. Supp. 2d 173 (S.D.N.Y. 2010) ........................................ 1

United States v. *Bongiorno*, No. 05 Cr. 390 (SHS), 2006 WL 1140864 (S.D.N.Y. May 1, 2006) 2

United States v. *Braeger*, No. 21 Cr. 233, 2023 WL 2136722 (E.D. Wis. Feb. 21, 2023) ............. 5

United States v. *Davis*, 989 F.2d 244 (7th Cir. 1993) ........................................................... 6

United States v. *Fried*, 450 F. Supp. 90 (S.D.N.Y. 1978) ..................................................... 8

United States v. *Lattimore*, 128 F. Supp. 405 (D.D.C. 1955) ............................................... 8

United States v. *Mowad*, 641 F.2d 1067 (2d Cir. 1981) ....................................................... 2

United States v. *Pirro*, 212 F.3d 86 (2d Cir. 2000) .............................................................. 2

United States v. *Risk*, 843 F.2d 1059 (7th Cir. 1988) ........................................................... 1

United States v. *Shellef*, 732 F. Supp. 2d 42 (E.D.N.Y. 2010) ............................................. 9

United States v. *Sun*, No. 24 Cr. 346 (BMC), 2025 WL 1296456 (E.D.N.Y. May 5, 2025) ......... 1

United States v. *Watts*, 72 F. Supp. 2d 106 (E.D.N.Y. 1999) ............................................... 8

United States v. *Yates*, 16 F.4th 256 (9th Cir. 2021) ............................................................ 3

*West 79th Street Corp. v. Congregation Kahl Minchas Chinuch*, No. 03 Civ. 8606 (RWS), 2004 WL 2187069 (S.D.N.Y. Sept. 9, 2004) ............................................................... 9

**Statutes**

18 U.S.C. § 1014 .................................................................................................................... 4

18 U.S.C. § 1344 ............................................................................................................ passim

# ARGUMENT

## I. Count Three Should Be Dismissed.

### A. The Court Can Dismiss the Bank Fraud Count Because the Uncontested Facts Do Not State an Offense.

The government's brief in opposition to Mr. Cartier's motion to dismiss Count Three predictably asserts that the bank fraud charge cannot be dismissed because the indictment tracks the language of the relevant statute. (Gov. Opp. at 6-7.)[1] Predictably, too, the government tries to sweep aside the constitutional due process concerns that motivated the *Russell* decision by merely stating that *Russell* very rarely applies. (Gov. Opp. at 9-10.) But never does the government take on in any meaningful way, let alone rebut, the compelling reasons why, post-*Ciminelli*, those constitutional concerns *do* apply here. A bare indictment, like the one in this case, hinders the court's ability to address possible *Ciminelli* issues on a motion to dismiss and potentially forces a defendant to go to trial on what may be a flawed legal theory, violating a defendant's Fifth and Sixth Amendment rights. (Def. Mem. at 12-13.)

The government also ignores that courts can and do dismiss an indictment where the uncontested facts do not state an offense. *See, e.g.*, *United States v. Risk*, 843 F.2d 1059, 1061 (7th Cir. 1988) (affirming pre-trial dismissal where the uncontested facts did not state an offense); *United States v. Aleynikov*, 737 F. Supp. 2d 173, 167 (S.D.N.Y. 2010) ("An indictment may be dismissed . . . where it 'fails to allege the essential facts constituting the offense charged.'" (quoting *United States v. Pirro*, 212 F.3d 86, 91 (2d Cir. 2000)); *United States v. Sun*, No. 24 Cr. 346 (BMC), 2025 WL 1296456, at *2 (E.D.N.Y. May 5, 2025) ("if the actions alleged could not possibly form the basis of liability of the offenses charged in an indictment, such an

---

[1] "Def. Mem." refers to Mr. Cartier's April 25, 2025 Memorandum of Law (ECF No. 87); and "Gov. Opp." refers to the government's May 9, 2025 opposition brief (ECF No. 88). Other capitalized terms have the same meanings as in Mr. Cartier's opening brief.

indictment must be dismissed"); *see also Pirro*, 212 F.3d at 91 (dismissing charge where facts alleged in indictment did not constitute a violation of the applicable statute as a matter of law). When the facts alleged do not state an offense as a matter of law, "it would be improper and a waste of resources for everyone involved to conduct a lengthy trial . . . and submit the case to a jury only to rule on a post-trial motion that the government's theory of criminal liability fails no matter what facts it was able to adduce at trial." *United States v. Bongiorno*, No. 05 Cr. 390 (SHS), 2006 WL 1140864, at *4 (S.D.N.Y. May 1, 2006) (citing *United States v. Mowad*, 641 F.2d 1067, 1069, 1071-72 (2d Cir. 1981)); *see also Mowad*, 641 F.2d at 1071-72 (concluding that a charge for dealing in firearms without a license "should not have been submitted to the jury" because the statute prohibiting illegal dealing in firearms did not apply to defendant's conduct as a matter of law).

### B. The Government's Legal Theory Is Not Viable.

The government's brief makes clear that there is no legally viable theory of property deprivation charged in Count Three.

The government articulates exactly what Defendant suggested in his initial memorandum and no more – that its theory is that lying to the bank when opening an account and then using that account – is *per se* bank fraud. (*See* Gov. Opp. at 11 (acknowledging that the government's theory is that "banks were deprived of traditional property rights" when "funds were transmitted out of the defendant's accounts"), 12 ("scheme involved not only opening accounts but also their continued use in accordance with his misrepresentations"), 13 ("withdrawing or transmitting those funds out of those accounts as part of a scheme to defraud the banks is a deprivation of a property interest"), 15 ("he had to lie to the banks regarding the nature of his business in order for them to process the transactions").) This case thus presents a stark and serious question, not controlled by existing precedent, which no other court has yet really to grapple with: If a

2

defendant lies to a bank about the nature of the business the account will conduct, and then uses that bank account to deposit and withdraw funds, does that allege a sufficient property interest to constitute bank fraud?

The answer must be no, for several reasons.

*First*, that theory is not consistent with the black letter law that 18 U.S.C. § 1344 requires more than just lies to a bank. The Supreme Court held in *Shaw* that to establish bank fraud, "the scheme must be one to deceive the bank *and* deprive it of something of value." *Shaw v. United States*, 580 U.S. 63, 72 (2016); *see also United States v. Yates*, 16 F.4th 256, 265 (9th Cir. 2021) ("that property deprivation 'must play more than some bit part in a scheme'—the loss to the victim 'must be an object of the fraud' . . . ." (quoting *Kelly v. United States*, 590 U.S. 391, 402-03 (2020)). Count Three alleges no deprivation of *the bank's property* – only that the defendant opened bank accounts and used them under false pretenses. The government in its opposition cites no facts or law that could reassure the Court that its theory involves a deprivation of a traditional property interest within the meaning of the federal fraud statutes. To the contrary, the government only expands upon the indictment allegations – at length – with regard to the supposed *lies* told to the banks about the use of the accounts, but makes no attempt to draw the necessary connection between the lies and the deprivation of something of value.[2] *See* Gov. Opp. at 3-5 (detailing alleged misrepresentations in bank opening documents, and recounting

---

[2] The government's assertion that the indictment is both detailed and sufficient is belied by the government's attempt to rely on facts that are not alleged in any of the charging documents and may or may not have been submitted to the grand jury. (*See*, *e.g.*, Gov. Opp. at 3-4.) At the same time, the government insists that "the Court should not look beyond the face of the indictment." (Gov. Opp. at 16.) In any event, the government still has not alleged a viable theory of property deprivation, and none of the newly added facts can cure that legal deficiency.

defendant's alleged admissions that he did not disclose to banks that his companies were doing business in cryptocurrency.)

The government asks the Court to misread *Shaw* as holding that a bank *always* has a property interest in funds deposited into a bank account, including as against the depositor of the funds, and that this is a traditional property interest sufficient to satisfy Supreme Court precedent. That is not what *Shaw* stands for. *Shaw* holds that a bank has a property interest in its customer's account *as against a thief who has no right to the funds*. *Shaw* is carefully limited to say that a bank "ordinarily" has a property right in deposited funds, but also caveats that a bank, like a bailee, cannot assert possession rights against the bailor, *i.e.*, the owner of the funds. *Id*. at 66-67. The government ignores these limitations, illogically concluding that because *Shaw* says that banks "ordinarily" have a property interest in deposits, that the bank necessarily owned the funds here. (*See* Gov. Opp. at 13 ("[T]he *Shaw* Court recognized that banks <u>ordinarily</u> own funds deposited into bank accounts—such as the funds deposited into the bank accounts in question here—meaning that it is their property.").

That reading of *Shaw* simply cannot square with *Shaw*'s holding and the well-recognized line of cases holding that the bank must be deceived *and* deprived of something of value. It would turn every deception of a bank into a bank fraud, which is what the government does in this Indictment.

*Second*, the government's theory would collapse Section 1344 into 18 U.S.C. § 1014, the statute that specifically prohibits false statements to banks without the need to show a property deprivation. 18 U.S.C. § 1014 ("[w]hoever knowingly makes any false statement or report . . . for the purpose of influencing in any way the action of . . . any institution the accounts of which are insured by the Federal Deposit Insurance Corporation" is guilty of a crime). The government

4

could have charged Mr. Cartier with a violation of Section 1014 but chose not to. Instead, the government impermissibly tries to use Section 1344, but without a clear articulation of how any "scheme" caused any deprivation of property to a bank. The government's application of Section 1344 to this case would effectively eliminate the critical element of obtaining the bank's property. If the government's position is upheld by the Court, it would collapse the difference between Sections 1014 and 1344 and render almost any deception of a bank in account opening documents into a federal bank fraud. This would conflict with the clear instructions from the Supreme Court that lies made to a bank, with nothing more, are not enough, *see Shaw*, 580 U.S. at 72, and that the federal fraud statutes are to be interpreted narrowly, *see*, *e.g.*, *Ciminelli v. United States*, 598 U.S. 306, 309, 316 (2023); *Kelly*, 590 U.S. at 402.

*Third*, to the extent the government purports to base its theory of property deprivation on the transfer of funds out of the accounts, the Indictment fails to allege that the transfer or withdrawal was *by means of* a false statement to the bank. As the Supreme Court held in a case that the government does *not* cite, Section 1344(2)'s "by means of" language requires that the government show a closer connection between obtaining property and a false statement:

> [Defendant] Loughrin fails to take account of a significant *textual* limitation on § 1344(2)'s reach. Under that clause, it is not enough that a fraudster scheme to obtain money from a bank and that he make a false statement. The provision as well includes a relational component: The criminal must acquire (or attempt to acquire) bank property "by means of" the misrepresentation . . . . It demands that the defendant's false statement is the mechanism naturally inducing a bank (or custodian) to part with its money.

*Loughrin v. United States*, 573 U.S. 351, 362-63, 365 (2014). *See United States v. Braeger*, No. 21 Cr. 233, 2023 WL 2136722, at *6 (E.D. Wis. Feb. 21, 2023) (dismissing bank fraud charges

5

under reasoning of *Loughrin* because it could not be inferred that defendant's false statement in setting up the account induced the bank to later disburse funds).

Likewise, in another case that the government ignores with a similar fact pattern to the instant case, *United States v. Davis*, the Seventh Circuit held that a defendant should have been acquitted where he made false statements in establishing an account to be able to deposit and withdraw a check. 989 F.2d 244 (7th Cir. 1993) (Posner, J.) The court explained:

> [O]nly in the most literal, hypertechnical sense could he be said to have schemed to defraud the *bank* of money or other property belonging to it. . . . [I]t is also true that the false representations made by Davis in establishing the account were done in order to get the proceeds of the check from the bank. So there is a sense in which the bank was 'defrauded' of the amount that Davis withdrew from the account. But it is not in the sense of the bank fraud statute, the purpose of which is not to protect people who write checks to con artists but to protect the federal government's interest as an insurer of financial institutions.

*Id.* at 246-47. The same is true here. Only in the most "hypertechnical" sense could Mr. Cartier be said to have defrauded the bank of property by opening an account to be able to deposit and withdraw money. Such conduct is not within the scope of the bank fraud statute.

Finally, the government ignores that no other case has raised this issue so starkly, and glosses over the far-reaching implications if the Court were to uphold its application of the bank fraud statute in this case. Any false statement in account opening documents about the nature or use of the account or funds would convert each withdrawal from the account into a fraud on the bank under Section 1344 – no case has made this finding explicitly.

The government dismisses the analysis in Defendant's memorandum discussing the lengthy factual recitations the district courts in *An*, *Motovich*, *Bankman-Fried*, and *Kwok* relied upon, and sweeps the Cartier indictment into this basket, claiming those district courts "found that the indictments were sufficient because the statutory allegations tracked the language of the statute." (Gov. Opp. at 14.) A reading of those opinions belies that over-simplification. The

6

district courts in those instances did not rely only on the simple tracking of the statute, but rather summoned the significant volume of facts included in the detailed speaking indictments – much more than the bare facts alleged here – to find that there was, as a legal matter, a property interest at stake. Defendant's opening memorandum details the numerous facts relied on by the district courts above, beyond the mere tracking of the indictment. (Def. Mem. at 20-21 (citing cases).) Nevertheless, to the extent those district court cases can be read to endorse the expansion of the federal bank fraud statute to cover any false statement to a bank in an account opening and then the use of that account to access one's own funds, they are wrongly decided.

### C. Count Three Must Be Dismissed.

The "to wit" clause in Count Three, along with the government's response to Mr. Cartier's motion, lay bare the government's theory and enable the Court to find based on uncontested facts that the bank fraud count is insufficient because it fails to allege the required property deprivation that is at the core of the bank fraud statute. Simply put, the government wants the Court to hold that if the following allegations are true, a bank fraud occurred: (1) a defendant applied to open a bank account by misleading the bank about what kind of business the defendant intended to conduct; (2) the bank opened the account; and (3) the defendant conducted financial transactions in the account. The government still fails to tell the Court how this amounts to a *deprivation* of the bank's property. Is opening and using a bank account considered to be the use of the bank's resources? Is the bank deprived of its prerogative to decline to service certain lines of business because of the risk involved?

The government has not articulated any rationale for why opening and using one's own bank account can constitute a deprivation of property if neither the bank nor anyone else loses money. The Court should conclude that, as a matter of law, that reading of Section 1344 is incorrect, and Count Three should be dismissed.

7

### D. Count Three Should Also be Dismissed Because It Fails to Allege False Statements.

While the government correctly notes that, on a motion to dismiss, "the Court should not look beyond the face of the indictment or draw inferences as to the proof that would be introduced by the Government at trial" (Gov. Opp. at 16), the government runs afoul of that very rule; its opposition brief is gummed up with material far outside the indictment, all in an effort to persuade the Court of the falsity of Mr. Cartier's bank-opening statements (*see* Gov. Opp. at 2-5). Defendant has very straightforwardly pointed out that the "false" statements on the face of the indictment are not false. The Indictment alleges that Mr. Cartier "falsely" told banks his accounts would be "used primarily for software or technology related transactions" and then used the accounts for "cryptocurrency" transactions. (Ind. ¶ 4.) As the government has admitted in its Complaint, it is not remotely false to characterize cryptocurrency transactions as software and technology related transactions. Indeed, federal agents in this case used the very same terms in describing cryptocurrency transactions to this Court. (Def. Mem. at 26.) Where the theory of falsity is manifestly flawed on the face of the pleadings, the Court can acknowledge that deficiency and dismiss as a matter of law. *See United States v. Fried*, 450 F. Supp. 90, 94 (S.D.N.Y. 1978) (charges dismissed where no statements were literally false); *United States v. Lattimore*, 128 F. Supp. 405, 409-10 (D.D.C. 1955) (perjury charge dismissed because statement was fundamentally ambiguous and subject to varying interpretations); *see also United States v. Watts*, 72 F. Supp. 2d 106, 111 (E.D.N.Y. 1999) (false statement theory that was too "amorphous" and "nebulous" should not have been submitted to a jury).

## II. Counts Two and Four Should Be Dismissed.

Counts Two and Four, which charge money laundering under 18 U.S.C. § 1956 and § 1957, should be dismissed because, as discussed above, the government has not adequately

8

alleged the "specified unlawful activity" of bank fraud. (Def. Mem. at 29.) Both counts should also be dismissed for the additional reason that the money laundering allegations impermissibly merge with the conduct underlying the alleged bank fraud. (Def. Mem. at 30-31.)

As to the second point, the government responds that the money laundering counts should survive because "the conduct that forms the basis of the bank fraud charge (the false statements to open bank accounts to operate an unlicensed money remitting business) is . . . distinct from the conduct that forms the basis of the money laundering charges (the transferring of the bank fraud proceeds)." (Gov. Opp. at 17-18.) But elsewhere, the government characterizes its theory of property deprivation for the bank fraud charge as the "withdraw[al] or transmit[al] . . . of funds out of [Mr. Cartier's] accounts as part of a scheme to defraud the banks." (Gov. Opp. at 13.) The act of "withdrawing or transmitting" funds may form the basis of the bank fraud *or* the money laundering, but that single transaction cannot be the basis for both. *See West 79th Street Corp. v. Congregation Kahl Minchas Chinuch*, No. 03 Civ. 8606 (RWS), 2004 WL 2187069, at *9 (S.D.N.Y. Sept. 9, 2004) (collecting cases); *United States v. Shellef*, 732 F. Supp. 2d 42, 72-73 (E.D.N.Y. 2010).

The government also asks this Court to look beyond the Indictment and Complaint to find that the bank fraud and money laundering are premised on distinct transactions because, "[a]t trial, the Government would expect the evidence to show, among other things, that the defendant sometimes transferred funds between bank accounts belonging to his Shell Companies before transferring the funds to a shell company in Colombia or another country." (Gov. Opp. at 18.) Nowhere does the Indictment or Complaint allege that Mr. Cartier's companies transferred funds other than to the Colombian Companies. Although the government suggests that this information can be found somewhere in the 13 terabytes of discovery provided to the defense, there is no

9

indication that these internal company transfers were ever presented to the grand jury. As the government counsels, the Court should limit its focus to the facts included in the Indictment, which fail to allege any distinction between the bank fraud and money laundering conduct. Those counts therefore impermissibly merge.

## CONCLUSION

For these reasons, the Court should dismiss Counts Two, Three, and Four of the Superseding Indictment.

Dated: New York, New York  
       May 16, 2025

Respectfully submitted,

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

By: /s/ *Kathleen E. Cassidy*  
Kathleen E. Cassidy  
Lisa Zornberg  
Kayasha B. Lyons  
Chloe Lewis

565 Fifth Avenue  
New York, NY 10017  
(212) 856-9600

*Counsel for Defendant*  
*Maximilien de Hoop Cartier*