MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
KATHLEEN E. CASSIDY
BENJAMIN S. FISCHER
CATHERINE M. FOTI
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
KAREN R. KING
THOMAS A. McKAY
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG
LISA ZORNBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com
———
WRITER'S CONTACT INFORMATION

kcassidy@maglaw.com
(212) 880-9413

COUNSEL
JOSHUA BUSSEN
PIPPA HYDE***
———
RETIRED/PARTNER EMERITUS
PAUL R. GRAND
———
ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT
***ALSO ADMITTED IN ENGLAND AND WALES

August 20, 2025

**BY ECF**
The Honorable Mary Kay Vyskocil
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re:    *United States v. Maximilien de Hoop Cartier*, No. 24 Cr. 133 (MKV)

Dear Judge Vyskocil:

On behalf of Defendant Maximilien de Hoop Cartier, we write pursuant to this Court's August 14, 2025 scheduling order directing Mr. Cartier to "submit a letter . . . clearly laying out which portions of the pending Motion to Dismiss remain live issues for the Court to resolve and which issues have been mooted by the superseding indictment."  (Dkt. 130.)

As set forth below, Mr. Cartier maintains that certain of his arguments as to new Counts Three and Four survive the superseding indictment, while the others are now moot.

**I.    The Motion to Dismiss**

On April 27, 2025, Mr. Cartier moved to dismiss Counts Two, Three, and Four of the then-operative indictment (the "S2," Dkt. 16), which charged Mr. Cartier with (1) engaging in substantive bank fraud, in violation of 18 U.S.C. § 1344 (S2 Count Three), (2) laundering the proceeds of the charged bank fraud, in violation of 18 U.S.C. § 1956 (S2 Count Two), and (3) conducting an unlawful monetary transaction involving the proceeds of the charged bank fraud, in violation of 18 U.S.C. § 1957 (S2 Count Four).  (*See* Dkt. 87 ("Mot.") at 4-5.)

Mr. Cartier made two principal arguments as to S2 Count Three, the bank fraud charge. *First*, Mr. Cartier argued that the government failed to allege that the fraud deprived any bank of any property interest, let alone a valid property interest in light of a long line of Supreme Court decisions culminating in *Ciminelli v. United States*, 598 U.S. 306 (2023).  (Mot. at 13-25.) *Second*, Mr. Cartier argued that the government's complaint, which acknowledged that cryptocurrency transactions are software and technology related transactions (Dkt. 1 ¶ 11(c)), undermined its theory of bank fraud – that Mr. Cartier had "falsely" told banks that his accounts

Morvillo Abramowitz Grand Iason & Anello P. C.

would be "used primarily for software or technology related transactions," when in fact he knew the accounts would be used for "cryptocurrency transactions" (Dkt. 16 ¶ 4). (Mot. at 26-29.)

As to S2 Counts Two and Four, Mr. Cartier argued that they should be dismissed because they cannot stand in the absence of a valid bank fraud count, and because they were based on the same transactions as, and thus impermissibly merged with, the bank fraud offense. (Mot. at 29-31.)

## II.    The Superseding Indictment

On July 28, 2025, a grand jury in the Southern District of New York returned the S4 Indictment (Dkt. 125, "S4"), which names Mr. Cartier as the sole defendant. The S4 differs from the S2, the basis for Mr. Cartier's April 27, 2025 motion to dismiss, in the following relevant[1] respects:

- Count Four of the S4 (formerly Count Three) includes a modified "to wit" clause enumerating four ways in which Mr. Cartier allegedly violated 18 U.S.C. § 1344, *i.e.*, that he

  (i) falsely represented to certain banks that accounts would be used by businesses involved in the software publishing or software development industry, such as software or application development or implementation, or data processing and hosting, even though CARTIER knew the accounts were for businesses used by CARTIER and others to receive and transmit funds on behalf of third parties; (ii) falsely represented to certain banks that accounts would not be used to operate a money transmitting business related to the operation of an over-the-counter cryptocurrency exchange, (iii) submitted false documents to certain banks regarding his business operations and an account with another bank to obtain additional banking services, such as wire reporting, reduced fees, and other enhanced account services; and (iv) made false representations and omitted material facts regarding the nature and purpose of transactions being conducted in accounts to certain banks to circumvent compliance, due diligence, and risk-based anti-money laundering systems and monitoring programs of those banks in connection with opening bank accounts and receiving and sending hundreds of millions of dollars of transactions.

  (S4 ¶ 5.)

- Count Two of the S2, charging money laundering of the proceeds of the bank fraud offense, is now Count Three of the S4.

- The S4 eliminates what was formerly Count Four of the S2, which charged Mr. Cartier with engaging in a monetary transaction in property derived from bank fraud, in violation of 18 U.S.C. § 1957.

---

[1] The S4 adds a new Count Two charging Mr. Cartier with laundering the proceeds of narcotics trafficking, in violation of 18 U.S.C. § 1956(a)(2)(B)(i) and 2 (S4 ¶ 3), but Mr. Cartier is not moving to dismiss this Count.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

**III.     Mootness**

We withdraw as moot the arguments to dismiss S2 Count Four (Mot. 29-31), which is no longer charged, and the argument that the government failed to allege falsity, made in Section I.E. of our motion to dismiss (Mot. 26-29).

Defendant maintains his argument that the indictment fails to allege a traditional property interest that is the object of the bank fraud, as set forth in the motion at Sections I.A through I.D. While the S4 indictment adds detail to the "to wit" clause of what is now the Count Four bank fraud, principally aimed at better articulating the government's theory of false representations made to banks, none of those changes adequately alleges a valid post-*Ciminelli* property interest that is the object of the fraud.

The S4 bank fraud charge makes clear that the government's theory of fraud rests on Mr. Cartier opening bank accounts with the alleged object of transmitting funds derived from cryptocurrency trades on behalf of third parties.  (*See* S4 ¶¶ 5(i), (ii), (iv).)  As discussed in detail in the motion to dismiss, this theory does not articulate *any* property interest (Mot. at 13-46), let alone one that can support a bank fraud charge after *Ciminelli* (Mot. at 17-25).  The act of opening a bank account based on false statements about the nature of the defendant's business is not a sufficient use of the bank's property to allege deprivation of a traditional property interest. (*See* Mot. at 17-25.)  *See United States v. Perez-Ceballos*, 907 F.3d 863, 869 (5th Cir. 2018) (reversing bank fraud conviction on ground that the government failed to produce sufficient evidence that the victim bank "suffered any risk of loss from the defendant's merely opening the account and moving from it money within her legal control").  The additional color set forth in Paragraph 5 about the nature of the allegedly false representations does not cure those deficiencies.

Moreover, as Defendant argued in his motion, a regulatory interest such as that newly alleged in Paragraph 5(iv) is not a cognizable property interest for the fraud statutes.  (Mot. at 11-12, 15.)  *See Cleveland v. United States*, 531 U.S. 12, 20, 24 (2000) (vacating mail fraud conviction for making false statements in an application for a license to operate video poker machines, which implicated only a regulatory interest).

Only the allegation in Paragraph 5(iii) – that Mr. Cartier "submitted fake documents to certain banks regarding his business operations and an account with another bank to obtain additional banking services, such as . . . reduced fees[] and other enhanced account services" – is arguably capable of satisfying the government's burden of alleging a traditional property interest. We do not anticipate that the government's evidence at trial will show that obtaining reduced banking fees was the object of any fraud, but was merely an "incidental byproduct," *see Kelly v. United States*, 590 U.S. 391, 402 (2020), and will be prepared to make the appropriate motions at the close of the government's case.

Defendant also maintains his argument that Count Three of the S4 (previously Count Two) must be dismissed if the Court finds that the bank fraud count fails, and for the separate reason that – to the extent the government ultimately relies on the transactions described in Paragraphs 5(i), (ii), and (iv) of Count Four – the transactions that are the basis of the money laundering charge in S4 Count Three are the same as the transactions underlying the predicate offense of bank fraud.  (Mot. at 29-31.)

Morvillo Abramowitz Grand Iason & Anello P.C.

For the above reasons, and those articulated in Defendant's previous memorandum in support of his motions to dismiss, Count Four or at a minimum, the clauses charged at (i), (ii), and (iv) of that Count, must be dismissed. Count Three must also be dismissed.

Respectfully submitted,

/s/ *Kathleen E. Cassidy*
Kathleen E. Cassidy

cc: AUSAs Jennifer Ong, Eli Mark