# EXHIBIT C

**U.S. Department of Justice**
Drug Enforcement Administration

## REPORT OF INVESTIGATION

**Page 1 of 6**

| 1. Program Code ▮ | 2. Cross File ☐ | Related Files | 3. File No. ▮ | 4. G-DEP Identifier ▮ |
|---|---|---|---|---|
| 5. By: ▮ ▮ At: PHILADELPHIA, PA DIVISION OFFICE | ☐ ☐ ☐ | | 6. File Title ▮ ▮ | |
| 7. ☐ Closed ☐ Requested Action Completed ☐ Action Requested By: | ☐ | | 8. Date Prepared 12-02-2021 | |

9. Other Officers: ▮ ▮ ▮ ▮ ▮ ▮ ▮ ▮ ▮ ▮ ▮

10. Report Re: Interview of Maximiliano DE HOOP CARTIER at the DEA Philadelphia Field Division on December 1, 2021

### SYNOPSIS

On Wednesday, December 01, 2021, members of Group 51 Financial Investigations Team (Group 51/ FIT) conducted an interview of Maximiliano DE HOOP CARTIER, hereafter DE HOOP CARTIER, at the DEA Philadelphia Field Division (DEA PFD). Present during the interview were Assistant United States Attorneys (AUSAs) ▮ ▮, Defense Attorney (DA) ▮, Group Supervisor (GS) ▮, Special Agent (SA) ▮, SA ▮, and OCDETF Senior Financial Investigator (FIC) ▮.

### DETAILS

1. Reference is made to all DEA-6 reports under this case file. All times are approximate.

2. At 1:30 p.m., DE HOOP CARTIER and DA ▮ arrived at the DEA PFD for an interview. Upon their arrival, investigators requested DE HOOP CARTIER's identification for verification purposes. At that time, DE HOOP CARTIER provided SA ▮ his passport from Argentina containing the following identifiers: [Name] Maximiliano De Hoop Cartier, [Nationality] Argentina, [Personal Number] ▮ [DOB] ▮, [Passport Number] ▮ [Expiration] ▮. **Agent's note:** *A photo of DE HOOP CARTIER's passport was taken and placed in the case file.* DE HOOP CARTIER told investigators his primary residence was in Paris, France.

| 11. Distribution: Division District Other | 12. Signature (Agent) /s/ ▮ ▮ | 13. Date 01-03-2021 |
|---|---|---|
| | 14. Approved (Name and Title) /s/ ▮ ▮ | 15. Date 01-04-2022 |

**DEA** Form **- 6**
(Jul. 1996)

**DEA SENSITIVE**
**Drug Enforcement Administration**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

USAO_0000002713

**U.S. Department of Justice**
Drug Enforcement Administration

| | 1. File No. ▇▇▇▇▇▇ | 2. G-DEP Identifier ▇▇▇ |
|---|---|---|
| # REPORT OF INVESTIGATION<br><br>*(Continuation)* | | |
| | 3. File Title ▇▇▇▇ ▇▇▇▇ | |
| 4.<br>**Page   2   of   6** | | |
| 5. Program Code ▇▇▇▇ | 6. Date Prepared<br>12-02-2021 | |

3. Investigators asked DE HOOP CARTIER to explain how he began his cryptocurrency business and the transactions he has conducted. DE HOOP CARTIER stated he works with OSL, described as a cryptocurrency supplier. DE HOOP CARTIER utilized Kroll or K2 Intelligence to conduct his "Know Your Customer" (KYC) prior to onboarding clients for transactions. DE HOOP CARTIER explained since 2019 he has had an agreement with the two suppliers to exchange United States Currency (USC) for cryptocurrency while operating as a wholesaler. DE HOOP CARTIER stated the suppliers require KYC documentation as well as conduct anti- money laundering investigations and charge a .5%-1% fee per transaction.

4. DE HOOP CARTIER told investigators he established the following companies to conduct cryptocurrency transactions: 1) VC Innovated Technologies LLC, 2) Softmill LLC, and 3) AZ Technologies LLC. DE HOOP CARTIER stated he created the companies through Prime Trust to conduct cryptocurrency transactions from their over-the-counter (OTC) desk. DE HOOP CARTIER stated the three (3) companies were incorporated at an address in Delaware for the sole purpose of receiving the mail and one affiliated with his company is physically present at the location. DE HOOP CARTIER told investigators he is well known in the cryptocurrency industry and generates most of his clients through referrals. DE HOOP CARTIER stated he charges a 1.5% commission fee for every transaction he conducts through the OSL exchange. When asked if the bank(s) where he established accounts knew he was operating as a cryptocurrency exchange DE HOOP CARTIER stated he told bank representatives he businesses were technology software services. DE HOOP CARTIER acknowledged he was operating as an unlicensed money remitter and told investigators he was in the process of applying for his license to operate as a money remitter in several states.

5. DE HOOP CARTIER told agents he established various bank accounts which have been closed due to the volume of cryptocurrency transactions conducted. DE HOOP CARTIER stated he received the majority of wire transfers through VC Innovated Technologies LLC in exchanged for cryptocurrency but has also received wire transfers through Softmill LLC and AZ Technologies LLC. DE HOOP CARTIER explained he established Chase bank accounts for the three(3) companies which was closed six (6) months prior to establishing bank accounts with Citizens Bank. DE HOOP CARTIER stated Citizens Bank was "crypto friendly" which is why he

**DEA** Form    **- 6a**
(Jul. 1996)

**DEA SENSITIVE**
**Drug Enforcement Administration**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

USAO_0000002714

**U.S. Department of Justice**
Drug Enforcement Administration

| | | | |
|---|---|---|---|
| **REPORT OF INVESTIGATION**<br><br>*(Continuation)* | 1. File No.<br>███████ | | 2. G-DEP Identifier<br>████ |
| | 3. File Title<br>███████  ████ | | |
| 4.<br>Page   3   of   6 | | | |
| 5. Program Code<br>███████ | 6. Date Prepared<br>12-02-2021 | | |



established the accounts with the bank. DE HOOP CARTIER stated following the seizure warrant executed on his Citizens Bank account, his account was frozen and he has not been able to access to the previously mentioned accounts. DE HOOP CARTIER told investigators he has not opened another bank account following the seizure.

6. Investigators asked DE HOOP CARTIER to detail what, if any, transactions were conducted in Colombia and the specific details he knew about those clients. DE HOOP CARTIER explained he began working with a software development company called ███████ in 2019. DE HOOP CARTIER stated ███████ is based in Medellin, Colombia and known to create cryptocurrency applications for cellphones. DE HOOP CARTIER said he began working with ████ ████████████████, hereafter ████████████ and ███████████████████, hereafter ████████ ████ Waspbit. DE HOOP CARTIER provided the following contact information for ███████ and ████████ 1) ███████████1 with contact name ████ ████ and 2) ████████████ with contact name ████████. DE HOOP CARTIER said he met ███████ at a summit in Colombia and took ███████ as a client. DE HOOP CARTIER stated he worked with ████████ for eight (8) months.

7. DE HOOP CARTIER told investigators ███████ recommended several clients to him including ██████████████████. **Agent's note:** ███████ ██████████ ████ ███████ ████ █████████████ ████████. DE HOOP CARTIER, while searching through his WhatsApp chat, stated ████████ sent him a message on November 12, 2020, and said he had a client in the United States who was interested in purchasing $200,000 in cryptocurrency. DE HOOP CARTIER stated he received a photo of ████████ ████████ Pennsylvania Department of State documents from ████████ DE HOOP CARTIER told investigators on November 20, 2020, he received a wire transfer from ████████ ████████████ ████ to VC Innovated Technologies LLC in the amount of $57,000 USC and a photo with confirmation of the wire transfer from ████████ DE HOOP CARTIER stated following the wire transfer, ████████ provided him with the following wallet id for ████████ ████████ to send the cryptocurrency: █████████████████████████ **Agent's note:** *The aforementioned wallet id is case sensitive. DE HOOP CARTIER showed investigators the WhatsApp chat with ████████ SA ████████ with the consent of DE HOOP CARTIER, took photographs of pertinent information in*

DEA Form      - 6a
(Jul. 1996)

**DEA SENSITIVE**
**Drug Enforcement Administration**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

USAO_0000002715

**U.S. Department of Justice**
Drug Enforcement Administration

| | | | 1. File No. | 2. G-DEP Identifier |
|---|---|---|---|---|
| **REPORT OF INVESTIGATION** *(Continuation)* | | | ▮▮▮▮▮▮▮ | ▮▮▮▮ |
| | | | 3. File Title GRINOLD, Itzhak | |
| 4. Page  4  of  6 | | | | |
| 5. Program Code AG1078 | | | 6. Date Prepared 12-02-2021 | |

*furtherance of the investigation. All photographs taken during the interview have been placed in the case file.* DE HOOP CARTIER told agents once he received the wallet id, he contacted OSL through a WhatsApp chat, confirmed OSL received a wire transfer from VC Innovated Technologies LLC to purchase the cryptocurrency and provided the wallet id for ▮▮▮▮▮▮ ▮▮▮▮▮ ▮ to conduct the transaction. DE HOOP CARTIER told investigators he conducted a total of nine (9) cryptocurrency transactions for ▮▮▮▮▮▮ ▮▮▮▮▮▮▮ ▮ at the direction of ▮▮▮▮ **Agent's note:** *From November 2020 through December 2020, approximately $937,648.98 in suspected drug proceeds was wired from ▮▮▮▮▮▮▮ ▮▮▮▮ to DE HOOP CARTIER's three (3) companies.* DE HOOP CARTIER acknowledged ▮▮▮▮▮ ▮▮▮▮▮▮ ▮ conducted wire transfers to his three (3) companies in exchange for cryptocurrency and explained ▮▮▮▮▮ along with other clients, have requested additional bank accounts to conduct several wire transfers. **Agent's note:** Members of ▮▮▮▮, ▮▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮▮ never discussed the previously mentioned funds being included in a cryptocurrency purchase with DE HOOP CARTIER or broker ▮▮▮ ▮ hereafter ▮▮▮

8. DE HOOP CARTIER stated prior to conducting the cryptocurrency transactions for ▮▮▮▮ ▮▮▮▮▮ ▮ he did not request their KYC documents. DE HOOP CARTIER further explained he recognized the oversight because as he always required KYC documents from potential customers in the past. When asked about why an exception was made, DE HOOP CARTIER stated the decision was based on his prior working relationship with ▮▮▮▮▮ DE HOOP CARTIER told investigators he always runs his clients through the online system of Kroll and/or K2 Intelligence to ensure the individuals/businesses he works with are legitimate. DE HOOP CARTIER told investigators he has made several attempts to contact ▮▮▮▮ in regards to ▮▮▮▮ ▮▮▮▮▮▮ ▮ but his calls and messages have not been answered or returned at the time he was interviewed. DE HOOP CARTIER stated he has contacted ▮▮▮▮▮ a friend of ▮▮▮▮ who utilizes ▮▮▮▮▮▮▮, to discuss ▮▮▮▮ whereabouts but has been unsuccessful.

9. Investigators asked DE HOOP CARTIER if the funds seized from his accounts belong to him or his clients. DE HOOP CARTIER stated $250,000 in USC were funds he earned from the cryptocurrency transactions he conducted

**DEA SENSITIVE**
**Drug Enforcement Administration**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

USAO_0000002716

**U.S. Department of Justice**
Drug Enforcement Administration

| REPORT OF INVESTIGATION | 1. File No. ▮▮▮▮▮▮▮▮ | 2. G-DEP Identifier ▮▮▮▮ |
|---|---|---|
| *(Continuation)* | 3. File Title GRINOLD, Itzhak | |

| 4. Page 5 of 6 | |
|---|---|
| 5. Program Code AG1078 | 6. Date Prepared 12-02-2021 |

and the rest of the funds belong to clients from the U.S., Argentina, and Colombia who were in the process of purchasing cryptocurrency. DE HOOP CARTIER stated he was often instructed by his clients to hold the funds for a few days until they closed on the price for the cryptocurrency. DE HOOP CARTIER stated several of his clients have contacted him in regards to not receiving their cryptocurrency. **Agent's note**: *DE HOOP CARTIER provided investigators with the following contact information of his client, whose name is unknown, referred to as* ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *. DE HOOP CARTIER told investigators "*▮▮ *has contacted him regarding the cryptocurrency purchase.*

10. At 4:37 p.m., the interview was concluded.

**INDEXING**

DE HOOP CARTIER, Maximiliano- NADDIS#: ▮▮▮▮▮▮▮

Remarks: A suspected money launderer and unlicensed money remitter operating from Paris, France. Recipient of approximately $937,648.98 in suspected drug proceeds. On 12/1/2021, told investigators he received wire transfers in exchange for cryptocurrency.



**DEA** Form    **- 6a**
(Jul. 1996)

**DEA SENSITIVE**
**Drug Enforcement Administration**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

USAO_0000002717

**U.S. Department of Justice**
Drug Enforcement Administration

| | | |
|---|---|---|
| **REPORT OF INVESTIGATION**<br><br>*(Continuation)* | **1. File No.** ▮ | **2. G-DEP Identifier** ▮ |
| | **3. File Title** ▮ ▮ | |
| **4.**<br>**Page  6  of  6** | | |
| **5. Program Code** ▮ | **6. Date Prepared** 12-02-2021 | |

**DEA** Form    **- 6a**
(Jul. 1996)

**DEA SENSITIVE**
**Drug Enforcement Administration**

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to w hich loaned.

Previous edition dated 8/94 may be used.

USAO_0000002718